**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Shawn Hearns, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:16-cv-2454-JMC |
| | ) | |
| Equifax Information Services, LLC, | ) | |
| Enterprise Recovery Systems, Inc., | ) | **ORDER AND OPINION** |
| First Associates Loan Servicing, LLC, and | ) | |
| Access Group, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

This matter is before the court pursuant to Defendant Access Group Inc.'s ("Defendant")

Motion for Summary Judgment. (ECF No. 71.) Plaintiff Shawn Hearns ("Plaintiff") opposes

Defendant's Motion. (ECF No. 73.) For the reasons set forth below, the court **DENIES AS**

**MOOT** Plaintiff's Motion to Compel and Sanction (ECF No. 60), and **GRANTS** Defendant's

Motion for Summary Judgment (ECF No. 71).

## I.      JURISDICTION

A defendant is permitted to remove a case to federal court if the court would have original

jurisdiction over the matter. 28 U.S.C. § 1441(a) (2012). A federal district court has "original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

28 U.S.C. § 1331. This matter arises under 15 U.S.C. § 1681, otherwise known as the Fair Credit

Reporting Act ("FCRA").

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a furnisher of consumer information as defined by the FCRA. (ECF No. 1-1

at ¶ 52.) Plaintiff sued Defendant for negligent and willful violations of the FCRA in connection

1

with a student loan he used to fund his education at ITT Technical College ("ITT Tech") in Columbia, South Carolina. (*Id*. at ¶¶ 7-9, 51-58.) Specifically, Plaintiff claims that on or about August 2, 2010, "unknown persons believed to be connected with ITT Tech fraudulently applied for and obtained a private PEAKS student loan in Plaintiff's name." (*Id*. at ¶ 9.)

In August 2010, Defendant received an Application and Loan Agreement for a PEAKS Private Student Loan ("Loan Application"), together with a certification of Plaintiff's enrollment at ITT Tech for the period from September 1, 2010 through June 1, 2011 ("Enrollment Certification"). (ECF Nos. 71-3, 71-4.) In reliance upon these documents, Defendant facilitated disbursement of the loan to ITT Tech in the amount of $21,567 on or about August 17, 2010. (ECF No. 71-5.) After being subsequently notified that Plaintiff had withdrawn from ITT Tech, Defendant refunded a portion of the loan, leaving a remaining balance of $15,960 as of September 28, 2010. (*Id*. at 5.)

In August 2010, after disbursing the funds to ITT Tech, Defendant notified Plaintiff of the loan via electronic and regular mail. (ECF No. 71-6 at 4.) Thereafter, Defendant provided Plaintiff with monthly loan statements and quarterly interest letters through April 2011, when Defendant stopped servicing the loan. (*Id*. at 1-3.) In November 2013, Plaintiff first submitted a dispute to Equifax Information Services, LLC ("Equifax"), claiming that the student loan was "not his." (ECF No. 71-7.) After researching the dispute, Defendant responded to the Automated Consumer Dispute Verification ("ACDV")[1] on November 5, 2013, verifying that the loan did belong to Plaintiff. (*Id*.)

---

[1] ACDVs are sent to creditors by reporting agencies electronically through a system called e-Oscar. Creditors are required to investigate and respond within 30 days of receipt.

On or about September 23, 2015, Plaintiff submitted a second dispute to all three credit reporting agencies.  (ECF No. 1-1 at ¶ 24.)  On December 15, 2015, Plaintiff also filed "a police report and an FTC complaint" regarding the allegedly fraudulent loan application.  (*Id.* at ¶ 27.) On or about February 24, 2016, Plaintiff submitted another dispute to Equifax.  (*Id.* at ¶ 29.) Plaintiff claims that the credit reporting agencies forwarded his disputes to Defendant, but that Defendant failed to conduct a "timely or proper" investigation of the disputed information.  (*Id.* at ¶ 53.)

On April 6, 2017, Plaintiff filed a Motion to Compel and Sanction, asserting that during a deposition, Defendant's counsel "repeatedly instructed Defendant's designated deponent, Melissa Scott, not to answer questions posed to her."  (ECF No. 60 at 1.)  On April 20, 2017, Defendant filed a response in opposition to Plaintiff's Motion, asserting that: (1) the questions were outside the scope of the 30(b)(6) Notice; (2) Ms. Scott had no first-hand knowledge of these allegations; and (3) to the extent that Ms. Scott possessed any knowledge at all on these subjects, that knowledge was derived from a privileged meeting with counsel before Plaintiff served either the Document Requests or the 30(b)(6) Notice.  (ECF No. 62.)  On April 27, 2017, Plaintiff filed a Reply to Defendant's response, largely re-asserting his position in his initial Motion to Compel and Sanction.  (ECF No. 63.)

On July 31, 2017, Defendant filed a Motion for Summary Judgment, asserting that Plaintiff's claims are "fatally flawed" and should be dismissed because: (1) Plaintiff's Complaint is barred by the FCRA's two-year statute of limitations; (2) Plaintiff has failed to establish that any of the challenged information furnished by Defendant is inaccurate; (3) Plaintiff has failed to articulate any "actual damages" or to establish any causal connection between Defendant's conduct and the harm claimed, as is required to state a claim for negligent non-compliance with

the FCRA; (4) Plaintiff cannot establish that Defendant failed to satisfy its duty under the FCRA to conduct a reasonable investigation of his disputes; and (5) in the absence of any facts to support the inference that Defendant demonstrated "reckless disregard" for its duties under the statute, Plaintiff's claim for willful violation of the FCRA must also fail. (ECF No. 71-1.)

On August 14, 2017, Plaintiff filed a response in opposition to Defendant's Motion, asserting that: (1) Plaintiff lacks sufficient discovery to oppose the Motion pending the resolution of a motion to compel presently before the court, such that the court should stay this Motion until the Motion to Compel is resolved; (2) Defendant waived the statute of limitations defense raised in the Motion by failing to plead it in its Answer; and (3) even if Defendant did not waive that defense, Plaintiff's FCRA claims are not time barred because Plaintiff subsequently re-filed this dispute twice within the statutory period. (ECF No. 73.)

On August 21, 2017, Defendant filed a Reply to Plaintiff's response, asserting that: (1) the information sought in Plaintiff's pending Motion to Compel (ECF No. 60) is not relevant to the issues raised in Defendant's Motion for Summary Judgment; (2) Plaintiff's argument that Defendant has waived its defense under the statute of limitations by failing to raise it in its Answer is "wrong as a matter of black letter law;" and (3) Plaintiff's interpretation of the FCRA statute of limitations, under which Plaintiff claims to have extended the two-year statutory period for filing a FCRA claim after discovering such a claim by filing additional disputes based on the same set of facts, is "likewise contrary to the law and to common sense, and has also been expressly rejected by the courts." (ECF No. 74.)

### III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor.'" *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving part[ies]," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.

The movant bears the initial burden of demonstrating to the court that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this threshold showing has been made, the non-moving party cannot survive summary judgment by resting on the allegations in the pleadings. Rather, the non-moving party must provide specific, material facts giving rise to a genuine issue. *See id.* at 324. Under this standard, the mere scintilla of evidence is insufficient to withstand the summary judgment motion. *See Anderson*, 477 U.S. at 255 (1986).

## IV. ANALYSIS

### A. Plaintiff's Request to Stay Determination

Under Federal Rule of Civil Procedure 56(d), a court may defer or deny a motion for summary judgment if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." However, denial of a nonmovant's request under Rule 56(d), is appropriate when "the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (affirming grant of summary judgment).

On February 7, 2017, Plaintiff served a Deposition Notice upon Defendant seeking the testimony of a corporate representative pursuant to Rule 30(b)(6). (ECF No. 74 at 4.) Attached to that Notice was a list of topics on which Plaintiff sought testimony from Defendant's corporate

designee, Melissa Scott.  (ECF No. 62-3.)  The list of 34 topics was identical to the list of 34 Document Requests that Plaintiff served on December 28, 2016.  (ECF No. 62-2.)  In preparation for the deposition, Ms. Scott reviewed all of the documents produced in response to Plaintiff's Document Requests.  (ECF No. 74 at 4.)  Absent from Plaintiff's discovery demands was any request for documents or communications related to Defendant's relationship with ITT Tech outside the specific, limited context of Plaintiff's disputed student loan.   (ECF No. 62-2.) Consequently, none of the produced documents touched upon this relationship, the PEAKS loan program, or Defendant's servicing of ITT Tech loans besides the one in Plaintiff's name.  (ECF No. 74-4.)

However, during deposition, Plaintiff's counsel asked a number of questions about Ms. Scott's current knowledge or understanding of allegations that ITT Tech engaged in fraudulent conduct by falsifying student loan requests.   (ECF No. 60-1.)   Though Ms. Scott testified knowledgably about the topics designated in the 30(b)(6) Notice, defense counsel instructed her not to answer these questions because: (1) they were outside the scope of the Notice; (2) Ms. Scott had no first-hand knowledge of these allegations; and (3) to the extent that Ms. Scott possessed any knowledge at all on these subjects, that knowledge was derived from a privileged meeting with counsel before Plaintiff served either the Document Requests or the 30(b)(6) Notice.  (ECF No. 74 at 5.)

Specifically, Ms. Scott was instructed not to answer on exactly nine occasions, in response to the following questions:

Q: Is Access Group aware that other people who were students at ITT or former students at ITT have made the same complaint?  (ECF No. 74-2 at 5 ¶ ¶ 4-6.)

Q. [I]s Access Group aware of other people besides Mr. Hearns who complained that fraudulent accounts were opened in their name while they were students or former students at ITT?  (*Id.* at 6 ¶ ¶ 8-12.)

6

Q. Is Access Group aware of any other students at any other institutions besides ITT that make claims related to the fraudulent opening of accounts similar to Mr. Hearns?  (*Id*. at ¶ ¶ 16-18.)

Q. [I]s Access Group aware of claims of fraudulent accounts made by people who were no longer enrolled at ITT at the time that the loan was made?  (Id. at ¶¶ 21-24.)

Q. Did Access Group have any participation or talk to the Securities and Exchange Commission at any time about ITT?  (*Id*. at 7 ¶¶ 2-3.)

Q. Do you know whether the ITT financial aid department would sit down with the student and complete the application together?  (*Id*. at 8 ¶¶ 5-7.)

Q. [I]s Access Group aware, as we sit here today, of information that would lead it to conclude that ITT in some situations regarding student loan applications was not truthful in the past?  (*Id*. at 9 ¶ ¶ 15-18.)

Q.  Of the percentage of private student loans that Access Group serviced, what percentage of that approximately was ITT PEAKS loans?  (*Id*. at 10 ¶¶ 5-7.)

Q. [D]id Access Group consider the fact that a loan had been an ITT PEAKS loan as having any higher probability for being fraudulent?  (*Id*. at ¶ ¶ 12-13.)

Plaintiff argues that "continuation of Defendant's deposition is likely to reveal . . . failures in Defendant's investigation duties [and] institutional knowledge that fraud was epidemic in the ITT Peaks loan program."  (ECF No. 73 at 6.)  The court finds that such information does not create a genuine issue of material fact on the statute of limitations issue raised in Defendant's Motion for Summary Judgment.  Consequently, Plaintiff has not been denied "the opportunity to discover information that is essential to his opposition."  *Dave & Buster's, Inc. v. White Flint Mall, LLP*, 616 F. App'x 552, 561 (4th Cir. 2015).  Therefore, the court does not find it is necessary to stay this Motion until the Motion to Compel is resolved.

## B.  Statute of Limitations

Defendant asserts that Plaintiff's claims are barred by the statute of limitations.  Pursuant to 15 U.S.C. § 1681(p), a claim under the FCRA must be brought "not later than the earlier of":

(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

(2) 5 years after the date on which the violation that is the basis for such liability occurs.

The two-year limitations period, which is applicable here, "begins to run when a party knows or should know, through the exercise of due diligence, that a cause of action might exist." *Croft v. Bayview Loan Servicing, LLC*, 166 F. Supp. 3d 638, 641 (D.S.C. 2016). "A plaintiff alleging an FCRA claim need not be fully aware of the specific failures of the furnisher's investigation before the two-year-statute of limitations commences." *Id*. at 642. Rather, the limitations period begins to run upon the plaintiff's discovery of a prospective cause of action. *Id*. at 641-42. In *Croft*, the court determined that the plaintiff "knew or should have known of the alleged FCRA violation at the latest" when she received a letter from the defendant "informing her of its determination that the [disputed] entry was accurate and that it would not be removing the entry from her credit report." *Id*.

That is precisely the situation here. Plaintiff knew everything he needed to know to bring his FCRA claims by no later than November 5, 2013, when Defendant responded to his first ACDV by rejecting his dispute and verifying that the loan belonged to Plaintiff. (ECF No. 71-7.) The basis for Plaintiff's ACDV was that the loan was "Not His/Hers." (*Id*.) Plaintiff was aware of the allegedly fraudulent PEAKS loan – and affirmatively disputed its validity through formal processes as early as November 2013. (*Id*.) Plaintiff admitted as much during his deposition:

Q. At the top [of the ACDV] where it says: Dispute I, not his/hers, does that mean you were disputing the fact that you had applied for the Peaks loan that Defendant was reporting and attributing to you?

A. Yes.

(ECF No. 71-8 at 9 ¶ 10-10 ¶ 15.)  However, Plaintiff waited until June 3, 2016, seven months after the statutory period expired, to file his Complaint.

Plaintiff's response to Defendant's statute of limitations argument is that because it was not plead in its Answer, it was waived.  (ECF No. 73 at 8.)  However, "it is well established that an affirmative defense is not waived absent unfair surprise or prejudice."  *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 n.3 (4th Cir. 2004).  This is because "the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it."  *Grunley Walsh U.S., LLC v. Raap*, 386 F. App'x 455, 459 (4th Cir. 2010) (citations omitted).  "Affirmative defenses raised for the first time in summary judgment motions" provide the plaintiff with adequate notice under Rule 8(c) and are therefore, not deemed waived. *Grunley*, 386 F. App'x at 459; *see also Branch Bank & Tr. Co. v. Tech. Sols., Inc.*, C/A No. 3:13-cv-01318-JFA, 2014 WL 691656, at *4 (D.S.C. Feb. 21, 2014).

In support of his argument, Plaintiff relies on *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161 (4th Cir. 1985).  In *Peterson*, the court held that "waiver is not automatic," but instead requires a "showing of prejudice or unfair surprise." *Id*. at 1164.  There, the defendant was aware of a potential statute of limitations defense at the outset of the litigation, but waited three years before raising it. *See id*. at 1165.  The court does not find that Defendant's affirmative defense is waived because Defendant was not aware that such a defense existed until the discovery phase of this case.  (ECF No. 74 at 8.)  The court acknowledges that Plaintiff avoided any mention of the November 2013 ACDV in his Complaint.  (ECF No. 71-2.)  Evidence of this earlier dispute only came to light as a result of a document production made by Equifax in response to Plaintiff's discovery requests, which Plaintiff did not forward to Defendant until February 10, 2017.  (ECF No. 74 at 8.)

Furthermore, the court does not believe that Plaintiff has suffered any unfair surprise or prejudice as a result of Defendant's statute of limitations defense. Plaintiff was afforded the "chance to rebut" this defense in opposing Defendant's Motion for Summary Judgment. *See Grunley*, 386 F. App'x at 459; *Branch Bank*, 2014 WL 691656, at *4. Indeed, Plaintiff was questioned about the 2013 ACDV during his deposition, such that he and his counsel should have anticipated that Defendant would raise the statute of limitations as an argument for summary judgment even before the Motion was filed.

Plaintiff continues in opposition by stating that even if the statute of limitations defense had been pled, it is still inapplicable in this case because of his subsequent disputes. (ECF No. 73 at 8.) Plaintiff asserts that the "relevant discovery is not of the existence of the account – but of a violation by Defendant of its duties under the FCRA." (*Id*.) Plaintiff contends that "because Defendant must meaningfully investigate each dispute made by Plaintiff (not just the first), each failure is a violation." (*Id*.)

In support, Plaintiff primarily relies on *Broccuto v. Experian Info. Sols., Inc.*, C/A No. 3:07CV782-HEH, 2008 WL 1969222 (E.D. Va. May 6, 2008). As an initial matter, the court in *Broccuto* was deciding a motion to dismiss, not a motion for summary judgment. Moreover, in issuing its ruling, the Eastern District of Virginia court applied a standard that is at odds with this court's established precedent. Construing the FCRA's statute of limitations, the court in *Broccuto* held that "a plaintiff must file suit within two years from the date that he learns that a credit reporting agency or lender did not act as required by the statute in response to his dispute." 2008 WL 1969222, at *3. By contrast, in the District of South Carolina, "the limitations period begins to run when a party knows or should know, through the exercise of due diligence, that a cause of action might exist." *Croft*, 166 F. Supp. 3d at 641.

In *Fargis v. Am. Express Travel Related Servs., Inc.*, a plaintiff who had "attempted from 1998 to 2002 to resolve [a] disputed credit card account," argued that the statute of limitations period for his FCRA claim did not begin to run until September 2004 when he subsequently "obtained copies of his credit report and realized the [continued] presence of the derogatory information." C/A No. 1:07-1507-MBS, 2009 WL 102537, at *2 (D.S.C. Jan. 12, 2009). The court rejected this argument and granted the defendant's motion for summary judgment, holding that the plaintiff "knew or should have known, through the exercise of due diligence, that a cause of action might exist against [the defendant] at least by August 23, 2002." *Id.*

Plaintiff asserts that because Defendant received additional disputes from Plaintiff, specifically in September 2015 and February 2016, and because "Defendant can't point to any steps it took to rule out Plaintiff's claim before it "verified" that the account was Plaintiff's proper liability, it violated its "reinvestigation duties."" (ECF No. 73 at 9.) However, Plaintiff's successive FCRA claims are based on the same alleged identity theft that Plaintiff disputed in 2013 and that Defendant already investigated and rejected. Further, the court does not find Plaintiff's view logical, as it would result in a perpetual statute of limitations.

With the court's conclusions that it does not need to stay this Motion until the Motion to Compel is resolved, and that Plaintiff's claim is time barred, it does not find it necessary to analyze Defendant's additional arguments regarding Plaintiff's claims for negligent and willful violation of § 1681s-2(b).

## V. CONCLUSION

For the foregoing reasons, the court **DENIES AS MOOT** Plaintiff's Motion to Compel and Sanction (ECF No. 60), and **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 71).

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

October 5, 2017
Columbia, South Carolina